

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 04 2004

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

|  |  |
|---|---|
| NEAL PARKER, WILBERT CARLTON, STEPHEN KING, RAY BURNS, DEBORAH WATKINS, LEONARD PONDER, BARBARA KING & PATRICIA BURNS, Individually and as Representative Plaintiffs on behalf of all others Similarly situated, | ) ) ) ) ) ) ) ) ) |
|  | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| BRUSH WELLMAN, INC., SCHMIEDE MACHINE AND TOOL CORPORATION, THYSSENKRUPP MATERIALS NA, INC. d/b/a COPPER AND BRASS SALES, AXSYS TECHNOLOGIES, INC., ALCOA, INC., McCANN AEROSPACE MACHINING CORPORATION, COBB TOOL, INC., and LOCKHEED MARTIN CORPORATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) ) |

**1:04-CV-0606 RWS**

CASE NO. _____

FORMS RECEIVED ✓
Consent To US Mag. ___
Pretrial Instructions ✓
Title VII NFC ___
SRE

## <u>NOTICE OF REMOVAL</u>

Defendant Lockheed Martin Corporation ("Lockheed Martin") hereby

removes the above-referenced action from the Superior Court of Fulton County,

State of Georgia, to the United States District Court for the Northern District of Georgia, Atlanta Division.

1.

On January 29, 2004, Plaintiffs filed a purported class action suit against Defendants, Brush Wellman Inc., Schmiede Machine and Tool Corporation, Thyssenkrupp Materials NA, Inc. d/b/a Copper and Brass Sales, Axsys Technologies, Inc., Alcoa, Inc., McCann Aerospace Machining Corporation, Cobb Tool, Inc., and Lockheed Martin in the Superior Court of Fulton County, State of Georgia, Civil Action File No. 2004CV80827.

**THIS CASE MEETS THE REQUIREMENTS FOR REMOVAL**

2.

This case is properly removable to federal court from state court because this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1442(a)(1).

3.

The summons and complaint were served on Defendant Lockheed Martin on February 6, 2004. Thus, the Notice of Removal is timely.

2

## FEDERAL OFFICER REMOVAL IS APPROPRIATE
## UNDER 28 U.S.C. 1442(a)(1)

4.

Under 28 U.S.C. § 1442(a)(1), a civil action commenced in state court may be removed to federal court where the action is brought against "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office."

5.

Removal is proper under 28 U.S.C. § 1442(a)(1) when (a) the defendant seeking removal is a "person" within the meaning of the statute; (b) there is a causal nexus between the defendant's actions, taken pursuant to a federal officer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense." *See Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989).

6.

With respect to the first requirement for federal officer removal, Lockheed Martin is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *See Holton v. Blue Cross and Blue Shield of South Carolina, et al.*, 56 F. Supp. 2d 1347 (M.D. Ala. 1999).

3

7.

With respect to the second requirement of federal officer removal, there is a

causal nexus between Lockheed Martin's actions, taken pursuant to the

Government's direction, control, and supervision and under color of federal office,

and Plaintiffs' claims. Plaintiffs base their claims against Lockheed Martin on

alleged exposure to beryllium from beryllium-containing products in connection

with the manufacture, production, repair, and testing of United States military

aircraft at Lockheed Martin's Marietta, Georgia facility.

8.

Lockheed Martin's Marietta facility opened in 1951 for the production of the

C-130 aircraft. For over sixty years, the Marietta facility has manufactured and

delivered military aircraft under contracts and pursuant to military specifications

over which the United States Government and its officers/employees had control.

To the extent that any products from which Plaintiffs allege exposure to beryllium

were placed in any aircraft during the manufacturing process, the repair process, or

the testing process at the Lockheed Martin Marietta facility, such actions were

required by the Government, under the direction of the Secretary of Defense,

Secretary of the Treasury, Secretary of the Army, Secretary of the Navy, Secretary

of the Air Force, and/or Transportation Secretary, pursuant to their specifications,

4

direction and supervision. Any decision regarding the placement or use of

beryllium in the aircraft or the component parts thereof was under the control, at

the direction and under the supervision of the Government. *See, e.g., In re Agent

Orange Product Liability Litigation,* ___ F. Supp. 2d ___, 2004 WL 231187

(E.D.N.Y. Feb. 9, 2004); *Akin v. Big Three Indus., Inc.,* 851 F. Supp. 819 (E.D.

Tex. 1994), *aff'd, Akin v. Ashland Chemical Co.,* 156 F.3d 1030 (10th Cir. 1998).

Consequently, Lockheed Martin was "acting under" an officer of the United States

when it designed and manufactured the military products in question. Thus, a

causal nexus exists between Lockheed Martin's alleged actions at the direction of

the Government and Plaintiffs' claims for relief in the action.

9.

Regarding the final requirement for federal officer removal, Lockheed

Martin has a colorable federal defense -- the government contractor defense --  to

Plaintiffs' claims. *See Boyle v. United Technologies Corp.,* 487 U.S. 500 (1988);

*Magnin v. Teledyne Continental Motors,* 91 F.3d 1424 (11th Cir. 1996).  The

government contractor defense is satisfied here because the design specifications

for the aircraft manufactured at Lockheed Martin were Government-approved; the

aircraft conformed to these specifications, and, to the extent that beryllium was

5

known at the time to be a hazardous material, the Government had knowledge of such hazard.

## PROCEDURAL COMPLIANCE

### 10.

Because Lockheed Martin satisfies the requirements for removal under 28 U.S.C. § 1442(a)(1), it is entitled to remove this entire action.  Joinder of the other Defendants in this action is not necessary to remove under 28 U.S.C. § 1442(a)(1). *See Ely Valley Mines v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981).

### 11.

Pursuant to 28 U.S.C. § 1446(a), Lockheed Martin attaches hereto as Exhibit A, a copy of all of the process, pleadings, and orders contained in the state court file that have been previously served upon the parties in the action.

### 12.

Pursuant to 28 U.S.C. § 1446(d), Lockheed Martin will promptly notify all parties and the Superior Court of Fulton County, State of Georgia of this removal through a Notice of Filing of Notice of Removal, a copy of which is attached as Exhibit B.

13.

By filing this Notice of Removal, Lockheed Martin does not waive, either

expressly or impliedly, its right to assert any defense that it could have asserted in

the Superior Court of Fulton County, Georgia.

WHEREFORE, Lockheed Martin respectfully submits this Notice of

Removal of the Action to this Court this 4th day of March, 2004.

KING & SPALDING LLP

J. Kevin Buster
Georgia Bar No. 099267
Richard A. Schneider
Georgia Bar No. 629569
Barry Goheen
Georgia Bar No. 299203
Carmen R. Toledo
Georgia Bar No. 714095

191 Peachtree Street, N.E.
Atlanta, Georgia 30303-1763
404-572-4600 (phone)
404-572-5142 (facsimile)

Attorneys for Defendant
Lockheed Martin Corporation



# EXHIBIT / ATTACHMENT

_____ A _____

(To be scanned in place of tab)

## Civil Docket

Fulton County Superior Court
Juanita Hicks, Clerk

Case No. 2004CV80827

Fulton County

March 3rd, 2004
3:32pm

NEAL PARKER, WILBERT CARLTON, STEPHEN
KING, RAY BURNS, DEBORAH WATKINS,
LEONARD PONDER, BARBARA KING &
PATRICIA BURNS, INDIVIDUALLY AND AS
REPRESENTATIVE PLAINTIFFS ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED AND EACH
OF THE PLAINTIFFS LISTED ON ATTACHMENT
A vs. BRUSH WELLMAN, INC.; SCHMIEDE
MACHINE AND TOOL CORPORATION,
THYSSENKRUPP MATERIALS NA, INC D/B/A

Filed : 01/29/2004

Status: Filed

Type: DAMAGE

Judge
  MARVIN S. ARRINGTON, SR.

Court Reporter

| Date | | Volume | Page |
|------|--|--------|------|

### Plaintiff Information

PLAINTIFF NAME                      ATTORNEY NAME
  PARKER, NEAL                        Shields, Robert E.

### Events & Orders of the Court

| | |
|---|---|
| 02/13/04 | SHERIFF'S ENTRY OF SERVICE (E3) |
| | VS-ON COBB TOOL INC ON 2/9/04 |
| 01/29/04 | PLAINTIFF'S ORIGINAL PETITION (E1) |
| | CO- COMPLAINT FOR DAMAGES, MEDICAL MONITOTING AND CLASS |
| | REPRESENTATION |
| 01/29/04 | CASE INITIATION FORM (E2) |

**SHERIFF'S ENTRY OF SERVICE**

Civil Action No. 2004CV 80827

Date Filed 1/29/04

Attorney's address

**SUPERIOR COURT**

**GEORGIA, FULTON COUNTY**

Neal Parker, et al

_____
Plaintiff

vs.

Name and Address of Party to be Served

COBB TOOL, Inc.
c/o Steven Dubner, Reg. Agent
3333 Peachtree Rd NE, Suite 230
Atlanta GA 30326

Bresh Wellman, Inc.
E t A l
_____
Defendant

**SHERIFF'S ENTRY OF SERVICE**

I have this day served the defendant _____ personally with a copy

of the within action and summons.

I have this day served the defendant _____ by leaving a copy

of the action and summons at his most place notorious place of abode in this county.

Delivered same into hands of _____ described as follows

age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of the
defendant.

Served the defendant COBB TOOL Inc b/y STEVN DUBNR a corporation

by leaving a copy of the within action and summons with _____

in charge of the office and place of doing business of said Corporation in this County.

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises
designated in said affidavit, and on the same day of such posting by depositing a true copy  of same in the United  States Mail; First Class
in an envelope properly addressed to the defendant(s) at the address  shown in said summons, with adequate postage affixed thereon
containing notice to the defendant(s) to answer said summons at the place stated in the summons.

Diligent search made and defendant _____

not to be  found in the jurisdiction of this court.

This _____ 8 _____ day of _____ FEB _____ 20 04

_____
DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK; CANARY-PLAINTIFF; PINK-DEFENDANT

PERSONAL

NOTORIOUS

CORPORATION

TACK & MAIL

NON EST

FILED IN OFFICE

FEB 8 2004

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

6009 - 201 - 1201

# SUPERIOR COURT OF FULTON COUNTY
## CASE INITIATION FORM

FOR OFFICIAL USE ONLY

CASE NUMBER

2 0 0 4 C V 8 0 8 - 2 7

DATE OF SERVICE

☐ ☐ - ☐ ☐ - ☐ ☐

DATE FILED:

_____ / _____ / _____

PLAINTIFF(S)   (Last Name, First, Middle Initial)

PARKER, NEAL, et al.

_____

_____

DEFENDANT(S)   (Last Name, First, Middle Initial)

BRUSH WELLMAN, INC., et al.

_____

ATTORNEY(S)   (Name, Address, Phone, Bar#)

ROBERT E. SHIELDS
1355 Peachtree St., Suite 1600
Atlanta, Georgia   30309
(404) 881-8900
642725

ATTORNEY(S)   (Name, Address, Phone, Bar#)

FILED IN OFFICE

JAN 2 9 2004

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## CASE TYPE/CATEGORY
(Please check one box only)

### APPEALS/CERTIORARI
☐ From a lower court
☐ Board of Commissioners
☐ Tax Assessors
☐ Workers' Compensation
☐ Other Administrative Appeal

### DOMESTIC RELATIONS
☐ Adoption, Petition for
☐ Alimony
☐ Annulment
☐ Child Support
☐ Child Support (DHR)
☐ Child Support (URESA)
☐ Contempt
☐ Custody
☐ Divorce
☐ Family Violence
☐ Foreign Judgment, Domestication
☐ Legitimation
☐ Modification
☐ Name Change
☐ Paternity
☐ Separate Maintenance
☐ URESA
☐ Visitation Rights

### GENERAL CIVIL
☐ Account
☐ Administrative Order
☐ Arbitration
☐ Assurance of Voluntary Compliance
☐ Birth Certificate, Petition for
☐ Bond Validation
☐ Certiorari, Writ of
☐ Condemnation of Personal Property
☐ Condemnation of Real Property
☐ Construction of Will or Contract, Petition for
☐ Contempt
☐ Contract
☐ Conversion
☐ Custody, Petition to Release from
☐ Damages, Suit for
☐ Declaratory Judgment
☐ Dead
☐ Defamation
☐ Domestication of Foreign Judgment
☐ Ejectment
☐ Election, Civil Action or Primary
☐ Equity, Complaint in
☐ Equitable Division, Petition for
☐ Foreclosure: Application for
☐ Foreclosure: Condemnation of

☐ Foreign Land, Lien Proceedings
☐ Fraud
☐ Funds, Suit to Recover
☐ Guardian, Appointment of
☐ Habeas Corpus
☐ Illegality, Affidavit of
☐ Impoundment Order, Application for
☐ Injunction
☐ Interpleader
☐ Judgment, Petition to Enforce
☐ Libel/Slander
☐ Malicious Abuse of Process
☐ Malpractice, medical
☐ Malpractice, other
☐ Mandamus
☐ Negligence, Complaint for
☐ Permanent Restraining Order
☒ Personal Injury
☒ Product Liability
☐ Property Damage
☐ Quo Warranto
☐ Record, Motion to Expunge
☐ Scire Facias
☐ Temporary Restraining Order
☐ Title for Real Estate
☐ Wrongful Death

☐ Other Cause of Action—(Cite Georgia Statute or give brief legal description): _____

RELATED CASE(S) (if any):   Judge _____   Case Number _____

_____   01 / 27 / 04   642725

SIGNATURE OF ATTORNEY   DATE   GEORGIA BAR #

*Rev. 1/99 pursuant to U.S.C.R. 39.2.1 and 39.2.2*

# ORIGINAL

### IN THE SUPERIOR COURT OF FULTON COUNTY
### STATE OF GEORGIA

NEAL PARKER, WILBERT CARLTON,                )
STEPHEN KING, RAY BURNS, DEBORAH             )
WATKINS, LEONARD PONDER, BARBARA             )
KING & PATRICIA BURNS, Individually and as   )
Representative Plaintiffs on behalf of all others )
Similarly situated and each of the Plaintiffs )
Listed on Attachment A,                      )
                                             )
        Plaintiffs,                          )
                                             )
v.                                           )
                                             )
BRUSH WELLMAN, INC.; SCHMIEDE                )
MACHINE AND TOOL CORPORATION;                )
THYSSENKRUPP MATERIALS NA, INC.              )
d/b/a COPPER AND BRASS SALES; AXSYS          )
TECHNOLOGIES, INC.; ALCOA, INC.;             )
McCANN AEROSPACE MACHINING                   )
CORPORATION; COBB TOOL, INC.; and            )
LOCKHEED MARTIN CORPORATION,                 )
                                             )
        Defendants.                          )

CIVIL ACTION,

FILE NO. 2004CV 80827

## COMPLAINT FOR DAMAGES, MEDICAL MONITORING AND CLASS REPRESENTATION

NEAL PARKER, WILBERT CARLTON, STEPHEN KING, RAY BURNS, DEBORAH

WATKINS, LEONARD PONDER, BARBARA KING and PATRICIA BURNS, for themselves

individually and as Representative Plaintiffs ("Representative Plaintiffs") on behalf of all others

similarly situated, and each of the Individual Plaintiffs listed in Attachment A hereto ("Individual

Plaintiffs"), for their complaint against Defendants Brush Wellman, Inc., Schmiede Machine and

1

Tool Corporation, Thyssenkrupp Material NA, Inc., d/b/a Copper and Brass Sales, Axsys Technologies, Inc., Alcoa, Inc., McCann Aerospace Machining Corporation, Cobb Tool, Inc., and Lockheed Martin Corporation allege the following:

1.

This Complaint states claims based on the common law and statutes of the State of Georgia. It is not intended to, and does not state, any federal causes of action. Plaintiffs do not seek relief in this action under the Constitution, laws, or treaties of the United States. There is not complete diversity of citizenship as required by 28 U.S.C. § 1332. Because this action does not arise under the Constitution, laws, or treaties of the United States, as required by 28 U.S.C. § 1331, and there is no diversity of citizenship as required by 28 U.S.C. § 1332, there is no federal jurisdiction, and no good faith basis for removal of this action to federal court.

## PARTIES, JURISDICTION AND VENUE

2.

Plaintiffs are Georgia residents who assert claims solely under Georgia law for personal injury and medical monitoring arising out of their exposure to beryllium from beryllium-containing products used at the Lockheed Martin Corporation's Marietta, Georgia facility ("The Lockheed Marietta facility"). The Plaintiffs fall into three (3) general categories as follows:

    (a)    Current employees of Lockheed Martin Corporation who have been and continue to be exposed to beryllium. Representative Plaintiffs NEAL PARKER, WILBERT CARLTON, STEPHEN KING, RAY BURNS and DEBORAH WATKINS are

2

current employees of Lockheed Martin Corporation who have been and continue to be exposed to beryllium, as are many of the Individual Plaintiffs;

(b)     Former and retired employees of Lockheed Martin Corporation who were exposed to beryllium during their employment.   Representative Plaintiff LEONARD PONDER, is a retired employee of Lockheed Martin Corporation who was exposed to beryllium during his employment, as are some of the Individual Plaintiffs; and

(c)     Family members of Lockheed Martin Corporation employees, who have been exposed to beryllium from the Lockheed Martin Corporation Marietta facility. Representative Plaintiffs BARBARA KING and PATRICIA BURNS, are family members of Lockheed employees, who have been exposed to beryllium from the Lockheed Marietta facility, as are some of the Individual Plaintiffs.

3.

The Plaintiffs are properly joined as parties in this action pursuant to O.C.G.A. § 9-11-20 because their claims arise out of the same transactions, occurrences, or series of transactions and occurrences, and have questions of law or fact common to all of them.

4.

Defendant Brush Wellman, Inc. ("BWI") is a foreign corporation created under the laws of the State of Ohio with its principal place of business located at 17876 St. Claire Avenue, Cleveland, Ohio 44110.  Although it regularly transacts business in the State of Georgia, it has failed to obtain a Certificate of Authority as required by O.C.G.A. § 14-3-1501 and has not designated a registered agent or office as required by O.C.G.A. § 14-3-1507.  It is subject to the

3

jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91(1)-(3) and may be served with process in

Ohio pursuant to O.C.G.A. §§ 9-10-94 and 14-2-1510.

5.

Defendant Schmiede Machine and Tool Corporation ("Schmiede") is a foreign corporation

created under the laws of the State of Tennessee with its principal place of business located on

Riley Creek Road, Tullahoma, Tennessee 37388. It previously was registered to do business in

Georgia, but withdrew its registration in 1985, despite the fact that it has continued to transact

business in the State of Georgia at various times since 1985. It is subject to the jurisdiction of this

Court pursuant to O.C.G.A. § 9-10-91(1)-(3) and may be served with process pursuant to O.C.G.A.

§§ 9-10-94 and 14-2-1510.

6.

Defendant Thyssenkrupp Materials NA, Inc. d/b/a Copper and Brass Sales ("Copper and

Brass Sales") is a foreign corporation created under the laws of the State of Michigan with its

principal place of business in Detroit, Michigan. It is subject to the jurisdiction of this Court and

may be served with process by serving its Registered Agent, United States Corporation Co., at its

registered office 40 Technology Park South, #300, Norcross, Georgia 30092.

7.

Axsys Technologies, Inc. ("Axsys") is the successor-in-interest to and liable for the acts

and omissions of Speedring, Inc. Speedring, Inc. was a fabricator of beryllium-containing product

which was sold to and used at the Lockheed Marietta Facility. Axsys is a foreign corporation,

incorporated in Delaware, with its principal place of business at 175 Capital Boulevard, Suite 103,

4

Rocky Hill, Connecticut 06067. Although it transacts business in the state of Georgia, it has failed

to obtain a Certificate of Authority as required by O.C.G.A. § 14-3-1501 and has not designated a

registered agent or office as required by O.C.G.A. § 14-3-1507. It is subject to the jurisdiction of

this Court pursuant to O.C.G.A. § 9-10-91(1)-(3) and may be served with process in Connecticut

pursuant to O.C.G.A. § 9-10-94 and 14-2-1510.

8.

Defendant Alcoa, Inc. ("Alcoa") is a foreign corporation created under the laws of the

Commonwealth of Pennsylvania. It is subject to the jurisdiction of this Court and may be served

with process by serving its Registered Agent, Corporation Service Company, at its registered

office 40 Technology Parkway South, #300, Norcross, Georgia 30092.

9.

Defendant McCann Aerospace Machining Corporation ("McCann") is a Georgia

corporation. It is subject to the jurisdiction of this Court and may be served with process by

serving its Registered Agent, John W. McCann, at its registered office, Post Office Box 80408,

Athens, Georgia 30601.

10.

Defendant Cobb Tool, Inc. ("Cobb Tool") is a Georgia corporation doing business under

the name Cobb Tool and Engineering Company. It is subject to the jurisdiction of this Court and

may be served with process by serving its Registered Agent, Steven Dubner, at its registered office

3333 Peachtree Road, N.E., #230, Atlanta, Georgia 30326.

5

11.

Defendant Lockheed Martin Corporation ("Lockheed") is a foreign corporation created under the laws of Delaware. It is subject to the jurisdiction of this Court and may be served with process by serving its Registered Agent, Corporation Service Company, at its registered office 40 Technology Parkway South, #300, Norcross, Georgia 30092.

12.

The Defendants are properly joined as parties to this action pursuant to O.C.G.A. § 9-11-20 because the claims are asserted against them jointly, severally, or in the alternative arising out of the same transaction, occurrence or series of transactions or occurrences and there are questions of law and fact common to all Defendants.

13.

Venue is proper in this case pursuant to Article 6, Section 2, Paragraph 4 of the Georgia Constitution and O.C.G.A. § 9-10-31 because the Defendants are joint tortfeasors and one or more of the Defendants reside in this County.

## FACTUAL BACKGROUND

14.

Plaintiffs are current and former employees, and family members of employees, of Lockheed at its Marietta, Georgia facility. Plaintiffs have been exposed to the toxic substance beryllium from the use of beryllium-containing products at the facility. They assert claims in this lawsuit for personal injury and medical monitoring.

6

15.

BWI is a principal, manufacturer, and processor of beryllium alloys and beryllium ceramics. During all relevant times to this action, BWI has engaged in the mining, milling, manufacturing, processing, compounding, converting, selling, and distributing of beryllium and beryllium-containing products. Its products have been sold to, either directly or through other manufacturers, fabricators, and distributors, and used in the Lockheed Marietta facility. Defendant Schmiede, Cooper and Brass Sales, Alcoa, McCann, and Cobb Tool were each manufacturers, fabricators, distributors, or machiners of beryllium-containing products sold to and used at the Lockheed Marietta facility. Axsys' predecessor in interest, for which it is liable, Speedring, Inc., was a fabricator of beryllium-containing products sold to and used at the Lockheed Marietta facility.

16.

Defendant Lockheed also was a manufacturer, fabricator, seller, and user of beryllium-containing products at its Marietta facility. Only those Plaintiffs who are family members of employees, and who were not employed themselves at Lockheed, are asserting claims in this lawsuit against Lockheed.

17.

Defendants knew or should have known that the sale to and use of beryllium-containing products at the Lockheed Marietta facility would result in respirable beryllium dust, fumes, and particulate matter into the workplace and surrounding environment at the facility, and that as a foreseeable result, Plaintiffs and other Lockheed employees would be exposed to harmful levels of

the toxic substance beryllium. *Defendants, and particularly Lockheed*, knew or should have known that the introduction of respirable beryllium dust, fumes, and particulate matter into the work place at the Lockheed Marietta facility also would result in family members of employees being exposed to *the toxic substance beryllium* because beryllium dust and particulate matter would be inadvertently carried home by employees on their bodies, clothing, and other property, resulting in harmful exposure to family members.

18.

Defendants knew or should have known that such harmful exposure to beryllium dust, fumes, and particulate matter would result in personal injuries and put *the Plaintiffs* and their families, as well as other Lockheed employees and their families, at substantially increased risk of catastrophic, chronic diseases.

19.

*Harmful* exposure to the hazardous substance beryllium causes various personal injuries from sub-clinical, cellular, and sub-cellular damage, to acute and chronic lung disease, dermatologic disease and cancer. Respiratory diseases are most commonly seen from harmful exposure to beryllium and manifest themselves on a continuum from acute inhalation injury to acute pneumonitis to beryllium sensitization and the chronic indolent form of chronic beryllium disease.

20.

Chronic beryllium disease can develop many years after exposure has ceased, and typically has an indolent course and an insidious onset of symptoms. On average, chronic beryllium disease

8

develops six (6) to ten (10) years after exposure has ceased, but it has been reported to occur more than thirty (30) years after exposure and as early as four (4) months after first exposure. It is characterized by a combination of symptoms including fatigue, non-productive cough, gradually progressive shortness of breath, chest pain, anorexia, weight loss, fevers, night sweats, and organ involvement. It is a granulomatous disease of the lung causing characteristic scaring of the lung.

21.

Each of the Plaintiffs and other Lockheed workers and their families have been exposed to harmful amounts of the hazardous substance beryllium as a foreseeable, direct and proximate result of the sale and use of beryllium-containing products by the Defendants at the Lockheed Marietta facility.

22.

As a foreseeable, direct and proximate result of their exposure to the hazardous substance beryllium, Plaintiffs and other Lockheed workers and their families already have suffered and will suffer in the future personal injuries in the form of sub-clinical, cellular, and sub-cellular damage and some have suffered from acute and chronic lung disease, dermatologic disease, and chronic beryllium disease.

23.

As a foreseeable, direct and proximate result of their harmful exposure, Plaintiffs and other Lockheed employees and their families have been placed at substantially increased risk of catastrophic latent disease, such as chronic beryllium disease and cancer.

9

24.

As a foreseeable, direct and proximate result of their harmful exposure to beryllium, Plaintiffs and other Lockheed employees and their families have suffered and will suffer in the future from fear, anxiety, and emotional upset as a result of their personal injuries and because they have been placed at substantially increased risk of catastrophic chronic disease. They have also suffered and will suffer economic losses and injuries.

## CLASS ACTION ALLEGATIONS

25.

Representative Plaintiffs bring this action on behalf of themselves and all other similarly situated, pursuant to O.C.G.A. § 9-11-23, as members of the proposed class. The Representative Plaintiffs propose the following subclasses:

(a) Current workers at the Lockheed Marietta facility who have been and continue to be exposed to beryllium at the facility;

(b) Former and retired workers at the Lockheed Marietta facility who were exposed to beryllium at the facility during their employment; and;

(c) Immediate family members of current or former workers of the Lockheed Marietta facility, who have been exposed to beryllium from the facility as a result of beryllium dust and particulate matter being brought home by family members who were employees on their bodies, clothing, and other property.

Excluded from the above-described subclasses are any employees, officers, or directors of the Defendants and any of the judges or their immediate families of this Court.

10

26.

This class action has been brought and may be properly maintained pursuant to the provisions of O.C.G.A. § 9-11-23(b)(2) and (b)(3).

27.

Numerosity of the Class:  The members of the class and subclasses are so numerous that separate joinder of each member is impractical within the meaning of O.C.G.A. § 9-11-23(a)(1). Although the exact number of individual claimants will be better established after class notification, upon information and belief, the number of members in the class and subclasses exceed five thousand (5,000) people.  The definitions of the subclasses are set forth in Paragraph 25 above.  Class members may be notified of the pendency of this action by regular mail, supplemented, if necessary and required by the Court by published notice.

28.

Common Questions of Fact and Law:  The claims of the Representative Plaintiffs raise questions of law and fact common to the questions of law and fact raised by the claims of each member of the class as required by O.C.G.A. § 9-11-23(a)(2).  The common questions of fact and law predominate over the questions affecting only individual class members, as required by O.C.G.A. § 9-11-23(b)(3).  The common questions of law and fact include at least the following:

(a)     Whether plaintiffs and the class members have been exposed to greater than normal background levels of beryllium;

(b)     Whether beryllium is a proven hazardous substance;

11

(c)     Whether as a proximate result of their exposure, plaintiffs and the class have

        an increased risk of contracting a latent disease;

(d)     Whether a monitoring procedure exists that make early detection of such

        disease possible;

(e)     Whether the prescribed medical monitoring regime is different from that

        normally recommended in the absence of exposure to the hazardous

        substance beryllium;

(f)     Whether the prescribed medical monitoring regime is reasonably necessary

        according to contemporary scientific standards;

(g)     Whether defendants' beryllium products were defective within the meaning

        of case authority relating to Georgia's Product Liability Statute;

(h)     Whether defendants had a legal duty to design, manufacture, fabricate,

        distribute and/or sell their beryllium products in such a manner which

        would avoid exposing plaintiffs and the class members to the hazardous

        substance beryllium;

(i)     Whether defendants had a legal duty to warn the intended users of their

        beryllium products, including plaintiffs and the members of the class, about

        the hazardous nature of their beryllium products;

(j)     Whether defendants had a legal duty to inform the intended users of their beryllium products about industrial hygiene protocols and practices that would have made use of their beryllium products safe;

(k)     Whether defendants had a legal duty to inform the intended users of their beryllium products, including plaintiffs and the members of the class, regarding applicable regulations and standards governing the use of their beryllium products;

(l)     Whether defendants violated the legal duties set forth in sections (h), (i), (j) and (k) above; and

(m)    Whether the establishment of a medical monitoring fund is in the public interest.

29.

Typicality:  Plaintiffs claims are typical of the claims of the members of the class, as required by O.C.G.A. § 9-11-23(a)(3).  The claims are typical because the facts and circumstances giving rise to liability are the same, the claims are based on the same legal theories, and the injuries suffered by the Representative Plaintiffs are the same kinds of injuries suffered by the members of the classes.

30.

Adequacy of Representation: The Representative Plaintiffs can fairly and adequately protect and represent the interests of each member of the class and subclasses as required by

13

O.C.G.A. § 9-11-23(a)(4).   The particular facts and circumstances that show that the

Representative Plaintiffs will fairly and adequately protect and represent the interests of the

members of the class include:   the fact that their interests do not conflict; their interests are

co-extensive with common rights of recovery based on the same essential facts and legal theories;

they are members of the same work force, similarly damaged and seeking the same remedies; and

they intend to prosecute this action vigorously.  Plaintiffs have retained counsel competent and

experienced in complex class action and toxic tort litigation and beryllium litigation.

31.

Defendants have acted on grounds generally applicable to all members of the proposed

class, making final declaratory and injunctive relief concerning the class as a whole appropriate,

within the meaning of O.C.G.A. § 9-11-23(b)(2).  Plaintiffs seek the equitable relief of medical

monitoring for each of the subclasses listed in Paragraph 25.  The factual basis for the equitable

claim of medical monitoring is set out in Paragraphs 33 through 41 *infra*.

32.

Common questions of fact and law between the class representatives and members of the

class predominate over questions affecting only individual class members, within the meaning of

O.C.G.A. § 9-11-23(b)(3).  The common issues are set forth in Paragraph 28 *supra*.  Additionally,

class action treatment is a superior method to other available methods for the fair and efficient

adjudication of the controversy.  Certification under O.C.G.A. § 9-11-23(b)(3) would be proper in

that, among other things, there is no interest by members of the class in individually controlling the

prosecution of separate actions, the expense of prosecuting individual claims for the matters for

14

which a class certification is sought would be prohibitive, neither the Plaintiffs nor members of the proposed class have filed or are parties to any litigation in which the legal and factual issues raised herein are to be adjudicated, and it is desirable to concentrate the litigation of claims in a single proceeding so as to avoid unnecessary and expensive duplication of actions and to provide for judicial economy. Whatever difficulties may exist in the management of a class action will be greatly outweighed by the benefits of joint litigation.

### FIRST CLAIM FOR RELIEF: MEDICAL MONITORING FUND

33.

Individual Plaintiffs and Representative Plaintiffs on behalf of themselves and the subclasses described in Paragraph 25, assert a claim for medical monitoring. Plaintiffs contend that the Court has the inherent, equitable power to create a medical monitoring fund and to certify a class pursuant to O.C.G.A. 21 9-11-23(b)(2) for that purpose. In the alternative, Plaintiffs assert that a medical monitoring fund minimally is part of the measure of damages for future medical expenses on a class-wide basis under various tort theories, set out hereinafter, and that this Court should certify a class pursuant to O.C.G.A. § 9-11-23(b)(3), as well.

34.

Plaintiffs and members of the referenced subclasses have been exposed to harmful levels of the hazardous substance beryllium as set out in Paragraphs 14 through 21.

35.

Beryllium is a proven hazardous substance which can cause a variety of personal injuries, as set out in more detail in Paragraphs 18 through 20.

15

36.

Plaintiffs' exposure to the proven hazardous substance beryllium was caused by the Defendants' wrongful and negligent conduct as alleged in greater detail in Paragraphs 41 through 58 *infra*.

37.

Monitoring procedures exist that make early detection of the diseases associated with *beryllium exposure possible*. The prescribed monitoring procedures are different from or in addition to those procedures normally recommended in absence of such exposure. The prescribed procedures are reasonably necessary according to contemporary scientific and medical principles for persons such as the Plaintiffs and the class members who have been exposed to harmful levels of beryllium.

38.

Individual Plaintiffs and members of the referenced subclasses will suffer irreparable harm if the requested medical monitoring program is not implemented. They are in danger of suffering catastrophic latent diseases from their beryllium exposure. Detection of these diseases and early treatment is medically reasonable and necessary to prevent the progression of further injury. It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to *beryllium in order to effectively treat class members*.

39.

Individual Plaintiffs and members of the referenced subclasses have no adequate remedy at law because without the requested medical monitoring program they will be subjected to further injury and delayed treatment. Injunctive relief is also in the public interest.

40.

This Court has the inherent equitable power to enter a permanent injunction requiring the Defendants to fund a court-supervised medical monitoring program. Plaintiffs hereby request that the Court enter a permanent injunction which requires Defendants to fund a court-supervised medical monitoring program which provides for medical testing, surveillance, monitoring, and study of the Individual Plaintiffs and members of the subclasses for conditions caused by their exposure to beryllium, as well as the payment of their attorneys' fees and expenses.

41.

In the alternative, Plaintiffs assert that they are entitled to an award of damages in an amount equal to a cost of the medical monitoring program.

## SECOND CLAIM FOR RELIEF: STRICT LIABILITY IN TORT

42.

Plaintiffs assert for their second claim for relief a claim for strict liability in tort pursuant to O.C.G.A. § 51-1-11, the Georgia Product Liability Statute. The Defendants were manufacturers of "personal property sold as new property directly or through a dealer" and each Plaintiff, including members of the subclasses, is a "person whom may use, consume, or reasonably be affected by the property" as those terms are used in the referenced product liability statute.

17

43.

The beryllium-containing products manufactured and sold by the Defendants and used at the Lockheed Marietta facility, were "not merchantable and reasonably suited for the use intended" as those terms are used in the statute, and were "defective" within the meaning of controlling Georgia case authority because the risk of harm from using the beryllium-containing products as intended outweighed at all relevant times the utility of using the product. The risk outweighed the utility because beryllium-containing products when used as intended cause or are highly likely to be a substantial contributing factor in causing various personal injuries.

44.

As a foreseeable, direct and proximate result of the defective condition of the beryllium-contained products sold by Defendants, Plaintiffs and members of the class have suffered personal injuries and damages as set forth in more detail in Paragraphs 22 through 24 *supra*.

45.

Defendants, with the exception of Lockheed, are strictly liable in tort for such injuries and damages to Plaintiffs and members of the class who are or were employees of Lockheed. Lockheed is strictly liable in tort for such injuries and damages to Plaintiffs and members of the class who were not employed by Lockheed.

18

## THIRD CLAIM FOR RELIEF: NEGLIGENCE

46.

The third claim for relief is negligence.  The Defendants, as manufacturers, fabricators, distributors, machiners, sellers, or users of beryllium-containing products, owed a duty to the Plaintiffs and members of the class as persons who reasonably and foreseeably could be affected by such products, to use reasonable care in the design, manufacture, fabrication, distribution, machining, sale, and use of such products, particularly because Defendants knew or should have known that Plaintiffs and members of the class foreseeably would be exposed to beryllium dust, fumes, and particulate matter and, as a result of such exposure, would suffer personal injuries, as is alleged in more detail in Paragraphs 22 through 24 *supra*.

47.

A duty of reasonable care owed by the Defendants must be commensurate with the risk.  In connection with the design, manufacture, fabrication, machining, sale, and use of products containing the hazardous substance beryllium, the duty to exercise reasonable care is the duty to use extraordinary care because of high risk of exposure to and injury from beryllium.

48.

In breach of its duty of care, each of the Defendants, with the exception of Lockheed, was negligent at least in the following respects:

(a)     In designing, manufacturing, fabricating, distributing, selling, and using beryllium-containing products, which it knew or should have known were likely to cause personal injuries to Plaintiffs and other members of the class;

19

(b)     In failing to design, manufacture, fabricate, distribute, or sell the products in a manner which would avoid exposure to the hazardous substance beryllium;

(c)     In failing to adequately warn or instruct Plaintiffs and other members of the class of the hazards of exposure to their beryllium-containing products;

(d)     In distributing and selling beryllium-containing products to the Lockheed Marietta facility despite the fact that Defendants knew or should have known that the products would result in exposure to and injury from beryllium to Plaintiffs and other members of the class; and

(e)     In distributing and selling beryllium-containing products to the Lockheed Marietta facility despite the fact that Defendants knew or should have known that there were inadequate engineering controls and personal protective equipment at the facility so as to prevent or reduce the exposure to beryllium.

49.

In breach of its duty of care to the family members of its employees, Defendant Lockheed was negligent in at least the following respects:

(a)     In failing to take reasonable and appropriate means, including engineering controls and personal protective equipment, to prevent exposure to its workers at its facility to beryllium dust, fumes, and particulate matter;

(b)     In failing to take reasonable and appropriate means to prevent exposure to family members of its workers to beryllium dust and particulate matter on the bodies, clothing, and other property of its employees; and

20

(c)   In failing to adequately warn and instruct its employees and family members of employees about the risks and hazards of exposure to beryllium and the probability that family members would be exposed to beryllium dust and particulates.

50.

As a direct, proximate, and foreseeable result of the Defendants' negligent acts and omissions, the Plaintiffs and other members of the class have suffered personal injuries as set out in more detail in Paragraphs 22 through 24 *supra*, and are entitled to the creation of a medical monitoring fund, either as an equitable remedy or as an item of damages.

## FOURTH CLAIM FOR RELIEF: STRICT LIABILITY FOR ABNORMALLY DANGEROUS AND ULTRA-HAZARDOUS ACTIVITIES

51.

The design, manufacture, fabrication, distribution, machining, sale, and use of products containing the hazardous substance beryllium, are abnormally dangerous and ultra-hazardous activities for which the law imposes strict liability for any injury or damage. Defendants engaged in such abnormally dangerous and ultra-hazardous activities and, therefore, are strictly liable for any injury or damage to Plaintiffs or members of the class.

52.

As a direct, proximate, and foreseeable result of the Defendants engaging in such abnormally dangerous and ultra-hazardous activities, Plaintiffs and members of the class were injured and damaged as set forth in more detail in Paragraphs 22 through 24 *supra*. The Defendants, with the exception of Lockheed, are strictly liable to Plaintiffs and members of the

21

class for such injuries and damages.  Lockheed is strictly liable to Plaintiffs and members of the

class who were family members and not employees of Lockheed for their injuries and damages.

## FIFTH CLAIM FOR RELIEF: FRAUDULENT CONCEALMENT
## AND CIVIL CONSPIRACY

53.

Defendant BWI and its predecessors have fraudulently concealed the risks and dangers of

beryllium-containing products and have conspired with others in the beryllium processing industry

to prevent the disclosure of accurate and complete information about the risks and hazards of

beryllium.

54.

BWI has known since at least 1948 that an airborne concentration of beryllium

substantially below the Atomic Energy Commission's and/or Occupational Safety & Health

Administration's permissible exposure level of 2 micrograms per cubic meter of air, over an eight

(8) hour period, was not safe and that workers exposed to airborne concentrations of beryllium

substantially below the regulatory levels could and would develop chronic beryllium disease.

Notwithstanding this knowledge, BWI failed to warn and instruct the purchasers and users of its

beryllium-containing products of the risks.

55.

Despite the fact that BWI knew or should have known that the referenced permissible

exposure level of 2 micrograms per cubic meter would not protect workers, BWI has fraudulently

claimed to users and others exposed to its beryllium products, and to government regulators and

22

private agencies, that such airborne concentrations were safe even for the most sensitive individuals.

56.

Beginning at least as early as 1951, BWI along with others in the US and international beryllium processing industry, consciously co-inspired and deliberately pursued a common plan to fraudulently conceal the true hazards and risks of airborne beryllium dust from those workers and their family members who would be exposed to beryllium dust. The conspiracy and the fraudulent concealment manifest in the following series of events:

(a)     In the 1950s, Brush Wellman (BWI) cooperated with the United States Atomic Energy Commission in a program to conceal from the public and from workers the true health risks of beryllium. During this period, the conspirators agreed to advocate and implement in their own plants a "tentative" occupational safety standard (the 2 microgram standard) that they did not believe would protect all workers from disease. In furtherance of this agreement, they did not advise workers or the public of the full state of industry knowledge about the health risks of beryllium and did not tell workers or the public that the safety standards were "tentative" and left some workers at risk.

(b)     On December 13, 1961, BWI formed an "Industry Wide Health and Safety Committee" to control and standardize the safety information provided in the labeling and packaging of their beryllium-containing products, to conduct public relations campaigns to distribute the companies' propaganda about the hazards of

23

beryllium, and to advocate less stringent regulatory standards.  In the words of one of its members, this Committee kept the beryllium "health problem . . . under control from a public relations standpoint."  Among other things, the companies began to publicly represent that since the imposition of the AEC standard, "industry experience" had proven the 2 microgram standard to be completely effective in preventing beryllium disease.  They also disseminated false information to undermine an earlier scientific study that had shown that chronic beryllium disease could develop at levels far below 2 micrograms.

(c)     When the Environmental Protection Agency and the Occupational Safety & Health Administration were created in the early 1970s, BWI agreed to cooperate with other beryllium processors in a joint plan to persuade EPA and OSHA to adopt and reaffirm the existing Atomic Energy Commission standards for beryllium exposure, based on false information about the health risks of beryllium.  Since the initial adoption of such standards and well into the 1990s, the conspirators have continued to jointly oppose efforts to change them and agreed to coordinate the information that would be presented to the agencies, so as to perpetuate false information about the health risks of beryllium.  For example, 1975 through approximately 1979, BWI and other beryllium processors agreed to jointly oppose the Occupational Health and Safety Administration's effort to impose a stricter occupational safety standard and jointly funded expert testimony that presented false and incomplete information about the health risks of beryllium disease.

24

(d)     In 1989, BWI agreed to fund and did fund (along with "such other companies as may wish to participate") a Scientific Advisory Committee to conduct industry-approved research that would counteract mounting scientific evidence that beryllium was more dangerous than the companies wished to acknowledge. The Committee remained active through the 1990s.

(e)     Beginning in the 1970s and up to the present, BWI retained and funded the work of so-called scientific experts to attack and rebut the work of NIOSH and other government agencies who established that beryllium is a human carcinogen when defendants herein and their co-conspirators knew or should have known that the attack of NIOSH in establishing that beryllium is a human carcinogen was entirely without merit or basis and was intended to advance false and misleading information to the scientific, industrial hygiene and public health committee.

57.

In furtherance of said conspiracy and common plan to conceal the true hazards, risks and toxicity of airborne beryllium, BWI expressly or tacitly agreed with other beryllium processors that beryllium workers and the public would not be told that those who were susceptible to beryllium would develop the disease at airborne concentrations below 2 micrograms of beryllium dust per cubic meter of air. Rather, BWI agreed to tell beryllium workers and the public, that so long as the eight (8) hour average airborne concentration of beryllium dust remained below 2 micrograms of beryllium per cubic meters of air, workers, and in turn those in neighboring communities, would be protected form developing chronic beryllium disease.

25

58.

Notwithstanding the fact that BWI was publicly stating that those exposed to airborne concentrations of beryllium dust were safe so long as the eight (8) hour average airborne concentration remained below 2 micrograms of beryllium dust per cubic meter of air, BWI knew that those who were susceptible to the toxic effects of beryllium dust would develop chronic beryllium disease at airborne concentrations substantially below that which they stated were safe and protective.

59.

As a result of the fraudulent concealment and civil conspiracy, Plaintiffs and Class Members have suffered for injury and damages alleged in Paragraphs 22 through 24 *supra*.

## SIXTH CLAIM FOR RELIEF: PUNITIVE DAMAGES AND ATTORNEY FEES

60.

Plaintiffs individually and on behalf of the class seek to recover punitive damages. The Defendants' actions, as alleged above, showed willful misconduct, malice, fraud, wantonness oppression, or the entire want of care which would raise the presumption of conscious indifference to the consequences within the meaning of O.C.G.A. § 51-12-5.1, the Georgia Punitive Damages Statute.

61.

Defendants are liable for punitive damages to Plaintiffs and members of the class to punish them for their conduct and to deter others from engaging in similar conduct in the future. Because the Georgia punitive damages statute provides that "only one award of punitive damages may be

26

recovered in a court in this state from a defendant for any act or omission if the cause or action arises from product liability, regardless of the number of causes of action which may arise from such act or omission", an appropriate punitive damage award must take into account and punish the Defendants for all of the Georgians who have suffered or will suffer from injury from the beryllium-containing products.

62.

The Defendants have also acted in bad faith and thus they are liable for attorneys' fees and costs in accordance with O.C.G.A. § 13-6-11.

Respectfully submitted, this 2̲9̲ᵗ̲ʰ̲ day of ̲J̲A̲N̲+̲A̲r̲y̲, 2004.

BY:̲ ̲̲R̲L̲b̲i̲r̲/̲h̲u̲d̲̲̲
ROBERT E. SHIELDS
State Bar No. 642725

DOFFERMYRE SHIELDS CANFIELD
    KNOWLES & DEVINE, LLP
1355 Peachtree Street
Suite 1600
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

WILLIAM T. HASTY
HASTY, POPE & BALL
211 East Main Street
Post Office Box 1818
Canton, Georgia 30114
Telephone: (770) 479-0366
Facsimile: (770) 479-0139

[PLAINTIFF ATTORNEYS CONTINUED ON NEXT PAGE]
27

JAMES H. WEBB, JR.
WEBB, LINDSEY & WADE, LLC
400 Westpark Court
Suite 220
Peachtree City, Georgia  30269
Telephone:  (770) 631-1811
Facsimile:  (770) 631-1771

RUBEN HONIK
GOLOMB & HONIK
121 South Broad Street
Ninth Floor
Philadelphia, Pennsylvania  19107
Telephone: (215) 985-9177
Facsimile:  (215) 985-4169

28

## ATTACHMENT A

Phil Albright
Carl E. Brown
Selma L. Brown
Angela Carlton, Individually and as next friend and guardian on behalf of Kerry Love , Jr.

Angela Smith
Rodney Carlton
Danny Cochran
Tammy Cochran
Tim Cochran
Kriss Cochran, Individually, and as next friend and guardian on behalf of Emily Cochran

William Cook, Jr.
SheilaAnn Cook
Matt Daniel
Nina (Lynn) Daniel
Travis Daniel
Richard Allen Daniel
Wayne Elrod
Sherry Lynn Elrod
Willard Kenneth Farist
Carol Farist, Individually and as next friend and guardian on behalf of Matt Farist and Danny Farist

Larry Free
Selvin K. Gloster
Walteena Gloster, Individually and as next friend and guardian on behalf of Kendrick Gloster

Nori Abdur-Raul
Larry Gore
Ann Gore
Ralph Griffin, Jr.
Kristine Anne Griffin
Ralph Griffin, III
Kenneth Griffin
Betsy Rose Griffin
Michael A. Hall
Matthew Craig Hall
Jai Lynsey Hall
Janet Hall, Individually and as next friend and guardian on behalf of Megan Alexandria Hall

Kelvin Hurt
Maxine Hurt
James Ingram
Carol Ingram
Alfred Irvin, Individually and as next friend and guardian on behalf of Alfred Irvin (son),
Ake Irvin, Amber Irvin and Tiara Irvin

David Karolyi
Barbara King, Individually and as next friend and guardian on behalf of Joe King and
Isaac King, R. Jackson (niece), Alison King

Ashley Holland
Matt King
Rev. John Weatherly
Mary Weatherly
Michael McCleskey
Doyle McTyre
Emily McTyre, Individually and as next friend and guardian on behalf of Courtney Anne
McTyre

Anthony McTyre

Hoa Van Nguyen
Hang Nguyen, Individually and as next friend and guardian on behalf of Jimmy Nguyen,
Jack Nguyen and Ann Nguyen

Carol Nguyen

James O'Daniels
Patricia Ann O'Daniels
Jason Michael O'Daniels
James Donald Parks
Ava Alexis Parker, Individually and as next friend and guardian on behalf of Alexis
Grace Parker, Arthur Parker, Leach Olivia Parker, Jacob Neal Parker

Randall Parker
Dula Parker, Individually and as next friend and guardian on behalf of Brittany Parker

Marcus Parker
Sharita Lee
Tara Philpot
Jerome Philpot, Individually and as next friend and guardian on behalf of Jerome Philpot,
Jr.

Beverly Ponder
David Ponder

Jerry Rabun
Billy Sams
Melinda Sams
Gary Schlute
David Stoltz
Mary Stoltz
Willard Stowe
Susan Stowe
Eugene Swancy
Marilyn Swancy
Dennis Thomas
Jimmy Walker
Samuel Walker
Doris Walker
Samuel Walker, Jr.?
Jamere Walker
Brandon Walker
Loyie Watkins, Individually and as next friend and guardian on behalf of Emily Watkins

Regan Wheeler
Paula Wheeler, Individually and as next friend and guardian on behalf of Rachael
Wheeler

Kenneth Williams

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

NEAL PARKER, WILBERT CARLTON,
STEPHEN KING, RAY BURNS, DEBORAH
WATKINS, LEONARD PONDER, BARBARA
KING & PATRICIA BURNS, Individually
and as Representative Plaintiffs on
behalf of all other Simularly situated
and each of the Plaintiffs Listed on
Exhibit A

                    **PLAINTIFF**

CIVIL ACTION,
NUMBER_____

VS.

BRUSH, WELLMAN, INC., ET AL.

FOR A COMPLETE LIST OF DEFENDANTS

SEE ATTACHED SERVICE LIST

                    **DEFENDANT**

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is: ROBERT E. SHIELDS
              DOFFERMYRE, SHIELDS, CANFIELD, KNOWLES & DEVINE, LLC
              1355 PEACHTREE STREET, SUITE 1600
              ATLANTA, GEORGIA 30309

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____29_____ day of _____JAN_____, 19_04_

                             Barbara J. Price
                             Clerk of Superior Court

                             By_____
                                      Deputy Clerk

To Defendant upon whom this petition is served:

This copy of complaint and Summons was served upon you _____, 19_____.

                                                          _____Deputy Sheriff

**Instructions:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

*Neal Parker, et al. v. Brush Wellman, Inc., et al.*
**Superior Court of Fulton County**

**DEFENDANT LIST**

1.    BRUSH WELLMAN, INC.
      17876 St. Claire Avenue
      Cleveland, Ohio 44110


2.    SCHMIEDE MACHINE AND TOOL CORPORATION
      Riley Creek Road
      Tullahoma, Tennessee 37388


3.    COPPER AND BRASS SALES, INC.
      c/o United States Corporation Co., Registered Agent
      40 Technology Parkway South
      #300
      Norcross, Gwinnett County, Georgia 30092


4.    AXSYS TECHNOLOGIES, INC.
      175 Capital Boulevard
      Suite 103
      Rocky Hill, Connecticut 06067


5.    ALCOA, INC.
      c/o Corporation Service Company, Registered Agent
      40 Technology Parkway South
      #300
      Norcross, Gwinnett County, Georgia 30092


6.    McCANN AEROSPACE MACHINING CORPORATION
      c/o John W. McCann, Registered Agent
      180 Trans Tech Drive
      Athens, Clarke County, Georgia 30601-1600

7.   COBB TOOL, INC.
     c/o Steven Dubner, Registered Agent
     3333 Peachtree Road, N.E.
     Suite 230
     Atlanta, Fulton County, Georgia 30326


8.   LOCKHEED MARTIN CORPORATION
     c/o Corporation Service Company, Registered Agent
     40 Technology Parkway South
     #300
     Norcross, Gwinnett County, Georgia 30092