IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NEAL PARKER; WILBERT CARLTON; STEPHEN KING; RAY BURNS; DEBORAH WATKINS; LEONARD PONDER; BARBARA KING; and PATRICIA BURNS, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. 1:04-CV-0606-RWS |
| Plaintiffs, | |
| v. | |
| BRUSH WELLMAN, INC.; SCHMIEDE MACHINE & TOOL CORPORATION; THYSSENKRUPP MATERIALS NA, INC. d/b/a COPPER & BRASS SALES, INC.; ALCOA, INC.; and McCANN AEROSPACE MACHINING CORPORATION, | |
| Defendants. | |

AO 72A
(Rev.8/82)

## **ORDER**

This case comes before the Court on Defendants' Motion to Enforce the March 29, 2005 Order [103] and Defendants' Motion for Judgment on the Pleadings as to the Class Claims [104]. The Court has reviewed the record, and now enters the following Order.

## **Background**

Plaintiffs brought this putative class action alleging that Defendants are involved in the manufacture and/or use of products containing beryllium, and that Plaintiffs were exposed to a respirable form of the substance, either by virtue of their work at the Lockheed Martin Corporation facility in Marietta, Georgia, or through the work of family members at that location who carried beryllium residue home on their skin, clothes, and belongings. In the original Complaint, Plaintiffs alleged:

> As a foreseeable, direct and proximate result of their exposure to the hazardous substance beryllium, Plaintiffs and other Lockheed workers and their families already have suffered and will suffer in the future personal injuries in the form of sub-clinical, cellular, and sub-cellular damages and some have suffered from acute and chronic lung disease, dermatologic disease, and chronic beryllium disease.

(Id. ¶ 22.)

By Order [90] dated March 29, 2005, the Court concluded that the Georgia courts would not recognize "sub-clinical, cellular, and sub-cellular" effects as actionable "injuries" as a matter of law. See Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290 (N.D. Ga. 2005). Consequently, it ordered Plaintiffs to provide a more definite statement of their claims, and in doing so, "to segregate out those Plaintiffs who have endured only subclinical, cellular, and subcellular effects from those who have sustained actionable tort injuries." Id. at 1295.

On April 20, 2005, Plaintiffs submitted to the Court a pleading captioned, "Substituted Amended Complaint for Damages" [92]. In that filing, Plaintiffs reiterated their position that subclinical, cellular, and subcellular effects constitute cognizable tort injuries, but went on to identify five individuals "whose injuries have manifested themselves such that they have been detected by physical examination and/or laboratory test[.]" (See Substituted Am. Compl. [92] at ¶ 2.)

Thereafter, Defendants moved to dismiss the Complaint in a filing entitled, "Defendants' Motion to Enforce the March 29, 2005 Order" [103]. In

3

that motion, Defendants argued that even those five persons identified as having some detectable response to beryllium exposure failed to assert a claim under Georgia law. More to the point, Defendants asserted that the allegation that these individuals had "something detected 'by physical examination and/or laboratory test' indicate[d] that their so-called injuries are nothing more than <u>beryllium sensitization</u> – meaning that they are capable of developing a beryllium-related injury in the <u>future</u>." (<u>See</u> Def.s' Mot. [103] at 3 (emphasis in original).)[1] Defendants, in support of their motion, attached the affidavit of Dr. Lawrence Repsher, a pulmonary physician who specializes in treating environmental and occupational lung disease, who opines that beryllium sensitization is not an actionable injury as that concept has been articulated by the Court.

---

[1] At certain points in their responsive papers, Plaintiffs also intimate that they suffer from "physical symptoms." (<u>See</u> Pls.' Opp'n to Def.s' Mot. to Enforce the March 29, 2005 Order [112] at 1 & 3-4.) Their pleading does not contain that allegation, however, and nothing in their brief or the supporting affidavit clarify what these amorphous "symptoms" might be (or whether, in fact, the term "symptom" is being used only to refer to the condition of beryllium sensitization). In any event, and as Defendants point out in their Reply Brief, the Court must assess the pleading as it stands, and cannot rest its decision on a "post-hoc characterization" of the Substituted Amended Complaint. <u>Magnin v. Teledyne Cont'l Motors</u>, 91 F.3d 1424, 1425 (11th Cir. 1996).

Plaintiffs opposed Defendants' motion, arguing that "their beryllium sensitization alone would establish that they have present physical injuries." (See Pl.s' Resp. [112] at 6.) In support of this proposition, Plaintiffs submitted the affidavit of Dr. Lisa Maier, whom they identify as "one of the foremost authorities on beryllium medicine in the world . . . ." (Id.)

In a telephone conference held on February 16, 2006, the Court informed the parties that it viewed Defendants' filing as, in effect, a motion to dismiss for failure to state a claim upon which relief may be granted. (See Feb. 17, 2006 Order [119] at 2.) Because the parties had attached to their filings materials outside the pleadings, however, the Court indicated that it intended to treat the filing as a motion brought pursuant to Rule 56. Accordingly, it gave the parties the opportunity "to consent to [the] resolution of the motion on the current submissions, or to inform the Court that they intend to present other materials made germane to the filing by Rule 56, and provide a schedule setting forth deadlines for the submission of such materials." Id.; see also FED. R. CIV. P. 12(b). On February 24, the parties unanimously consented to resolution of "Defendants' Motion to Enforce the March 29, 2005 Order" [103] on the

5

submissions presently before the Court.  (See Stipulation Regarding Authenticity and Admissibility of Certain Evidence [122].)

## Discussion

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A court should view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In the instant case, the question presented is clear:  Based on the materials of record, viewed in the light most favorable to Plaintiffs, does beryllium

sensitization constitute an actionable injury under Georgia law?  If the answer to that question is "yes," or even, "in some circumstances," then those five persons identified in Plaintiffs' Substituted Amended Complaint for Damages have stated a claim.  If the answer to that question is "no," as a matter of law, then they have not, and Plaintiffs' suit is subject to dismissal.

In their papers, Plaintiffs have done a commendable job trying to place beryllium sensitization in the universe of cognizable tort injuries.  After carefully reviewing their filings and Dr. Maier's affidavit, however, the Court finds that the sensitivity and "symptoms" they describe fall short of what conditions or effects the Georgia courts (and for that matter, other jurisdictions) have held actionable.

**I.    The Parties' Evidence**

Dr. Repsher, Defendants' expert, seems to concede that, in some instances, exposure to beryllium can lead to serious impairments, including chronic beryllium disease ("CBD").  (See Repsher Aff. ¶ 2.)  He describes CBD as a condition with two diagnostic predicates: (i) a finding of beryllium sensitization through, *e.g.*, a lymphocyte proliferation test ("LPT" or "BeLPT"), and (ii) a finding of granulomas, typically in the lungs, on biopsy.  (Id.).  Dr.

7

Repsher goes on to describe the LPT procedure, designed to identify beryllium sensitization, as follows:

> In an LPT, blood or lung fluid cells are exposed to beryllium salts to determine whether the immune system recognizes beryllium as an antigen. A positive result shows that a person's immune system does recognize beryllium and is capable of mounting a response to it, if further exposed.

(Id. at ¶ 4.)

According to Dr. Repsher, beryllium sensitization, identified, for example, by an LPT, is not itself an "allergic reaction" or representative of a "harmful change." (Id. at ¶ 5.) Rather, he describes "[a] 'sensitized' person is simply one who is determined, by some statistical measure, to have sufficiently more [beryllium-targeting] lymphocytes than the members of a control group . . . ." (Id. at ¶ 6.) "Sensitization[,]" Dr. Repsher continues, "is not a present impairment, injury, illness or disease." (Id. at ¶ 8.) He states beryllium sensitization is "nothing more than the normal response of a person's immune system to a material that it recognizes as an antigen." (Id. at ¶ 8.) "[It] is . . . not an alteration of the body, but merely a potential for alteration under future conditions . . . . It cannot be observed, and is invisible to the eyes, to x-rays,

8

and even to the microscope; indeed, it exists only at the biochemical level." (Id. at ¶ 10.)  "A person who is sensitized to beryllium is indistinguishable from any other person, except that his LPT test will be positive."  (Id. at ¶ 12.)  While some persons with beryllium sensitization will eventually develop CBD, Dr. Repsher states, "[t]here is no basis in the existing literature for predicting that a person who is only sensitized to beryllium is more likely than not, much less reasonably certain, to develop CBD."  (Id. at ¶ 14.)

Plaintiffs' expert, Dr. Maier, differs from Dr. Repsher in two notable respects.  First, she repeatedly takes issue with Dr. Repsher's assertion that beryllium sensitization is a "normal response" of the human body to beryllium exposure.  (Maier Aff. ¶¶ 3, 6-7.)  To the contrary, she asserts that "the demonstration of an abnormal immune response or abnormal BeLPT is not a normal response."  (Id. at ¶ 6; see also id. at ¶ 7 ("While this abnormal immune response to beryllium may not be 'observed,' it is a physiologic immune response that is not within the realm of a normal response.").)  A "positive" LPT "indicates a stimulation index at two or three standard deviations above the mean level."  (Id. at ¶ 5.)

9

Second, Dr. Maier disagrees with Dr. Repsher about the likelihood that individuals experiencing beryllium sensitization will eventually suffer from CBD. Whereas Dr. Repsher states that existing literature does not support the conclusion that sensitized individuals will, more likely than not, develop CBD (see Repsher Aff. at ¶ 14), Dr. Maier hypothesizes that "[i]t is likely that the majority of individuals with sensitization will eventually develop CBD[,]" and that "[s]ome of these individuals [will] subsequently go[ ] on to develop physiologic impairment and require therapy for CBD." (Maier Aff. ¶ 6.)

Putting aside these areas of discord, however, Dr. Maier does appear to concur with Dr. Repsher (or at least, fails to affirmatively contradict him) that beryllium sensitization, whether "abnormal" or not, cannot itself be labeled an "impairment." (See id. at ¶¶ 6-7.)[2]  Instead, she describes beryllium

---

[2] In the conclusion to her affidavit, Dr. Maier also avers, "Thus from the above information, it is clear that beryllium sensitization is a marker of injury to beryllium." (Maier Aff. at ¶ 7.)  Twice more in the concluding paragraphs of her affidavit, she refers to beryllium sensitization as an "immunologic injury" (likened to HIV). (Id. at ¶¶ 7-8.)  For at least two reasons, the Court does not find that this invocation of the word, "injury," gives rise to a "battle of the experts" that might warrant the denial of summary judgment.

First, in describing beryllium sensitization as a "marker" of beryllium injury, Dr. Maier does not contradict Dr. Repsher in any meaningful sense.  A "marker" of disease, according to all the texts this Court has been able to locate, is merely "a physiological substance . . . that . . . may indicate disease[.]"  See, e.g., AMERICAN HERITAGE COLLEGE DICTIONARY 830 (3d ed. 2000).  Dr. Repsher concedes as much in saying that beryllium sensitization is of one of the two diagnostic predicates to a finding of CBD.  But, the

10

sensitization as "an important *precursor* to the impairing lung disease, [CBD]." (Id. at ¶ 6) (emphasis supplied).[3]

## II.   Analysis

The affidavits submitted by the parties require the Court to again examine the point at which a "condition" or "effect" becomes an injury cognizable under applicable tort law–here, that of Georgia.  In its March 2005 Order, the Court addressed this issue and rejected Plaintiffs' contention that Georgia would recognize "sub-clinical, cellular, and sub-cellular" effects as compensable harms.  See Parker, 377 F. Supp. 2d at 1296.  Instead, it read the law to require a more concrete, discernable adverse impact before a claimant could recover in

---

evidence is also undisputed that until a patient develops granulomas, he or she cannot be diagnosed with any medically recognized "disease."  Beryllium sensitization, then, remains only a precursor, albeit a crucial one, to the diagnosis of a patient with CBD.

Second, these statements by Dr. Maier, on their face, merely reflect a conclusion she has drawn from the testimony that precedes it. (See Maier Aff. at ¶ 7 ("Thus from the above information . . . .").)  While the Court gives credence, as it must, to all the factual bases for Dr. Maier's conclusion, it need not credit the legal significance she attributes to them–the question of whether a given condition constitutes an actionable "injury" remains one for the Court.  See, e.g., Boyd v. Orkin Exterminating Co., 381 S.E.2d 295, 297-98 (Ga. Ct. App. 1989).

[3] Notably, in a work she published in 2001, Dr. Maier described patients with beryllium sensitization, who had not yet developed CBD, as "asymptomatic, having normal lung function, normal exercise tolerance, normal chest radiographic results, and lung biopsies that do not show granulomas."  See Lisa A. Maier, Beryllium, CLINICAL ENVIRONMENTAL HEALTH AND TOXIC EXPOSURES 922 (2nd ed. 2001).

tort (or, for that matter, could be forced to bring suit to avoid a statute of limitations bar). The Court did not endeavor to delineate, with precision, the minimum threshold an individual would have to cross in order to bring suit, but rather alluded to the necessary showing variously as "manifest impairment," "manifest physiological symptoms," and "manifest physiological injury." See id. at 1297-1302. It remains reticent, as a federal court interpreting state law, to undertake that delineation. Nevertheless, Plaintiffs' amended complaint requires that it decide whether beryllium sensitization constitutes an actionable tort injury under Georgia law. The Court concludes that it does not.

As this Court reads Georgia law, and indeed, the more general body of tort jurisprudence, something more than a detectible biochemical indicator is required before a prospective claimant may bring suit. Rather, the would-be plaintiff must demonstrate a condition that is demonstrably adverse–e.g., a manifest impairment, an infection, some overt diminution in capacity, or other harmful change in their body's structure or function. This is what was meant, even if inexpertly conveyed, by this Court's March 2005 Order, where it insisted upon an allegation of some "manifest physiological *symptom*" to state a claim

12

for relief. See Parker, 377 F. Supp. 2d at 1299 (emphasis supplied).[4]   The Court finds support for this conclusion in Georgia law. In Boyd v. Orkin Exterminating Co., 381 S.E.2d 295, 297-98 (Ga. Ct. App. 1989), overruled on unrelated grounds, Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994), the Georgia Court of Appeals held that the mere ability of laboratory tests to detect some abnormality in a patient's bloodstream did not suffice to show an actionable "injury." See Boyd, 381 S.E.2d at 297-98 (in a case alleging negligent exposure to pesticides, presence of toxin metabolites in children's blood stream twenty-six times that found in normal population did not constitute injury). It distinguished between those conceivable precursors to disease where the claimant could not show to a "reasonable medical certainty" that the disease would eventually occur, and "actual disease, pain, or impairment of some

---

[4] The Court appreciates that "symptom" is literally defined as "[a] sign or an indication of disorder or disease, esp. when experienced by an individual as a change from normal function, sensation, or appearance." AMERICAN HERITAGE COLLEGE DICTIONARY 1375 (3d ed.2000). In the broadest sense, that definition could be read to embrace an "abnormal" response to an LPT. But the Court invoked the concept in its March 2005 Order to convey a more negative connotation; that is, to refer to those conditions that overtly affect the patient's physical well-being in an adverse way. Put differently, the Court's reference to "symptom" was an attempt to distinguish between conditions that result in some manifest impairment from those that are better understood as "asymptomatic." Cf. Maier, supra at 922 (describing individuals experiencing beryllium sensitization as "asymptomatic").

13

kind[.]" Id. at 298.  The latter, it reasoned, could sustain tort injury; the former could not.  Id.

The Court appreciates that this presents a somewhat stronger case than Boyd, albeit only slightly, in that the laboratory test at issue here identifies more than the mere presence of a foreign toxin or its metabolites in the patient's body, and instead uncovers the body's "abnormal" biochemical reaction to the presence of an artificially introduced antigen.  Because the condition at issue here involves an unusual physiological response, it is not in all respects identical to that involved in Boyd.

The Court, however, does not believe that the distinction saves Plaintiffs' claims.  Beryllium sensitization, as Plaintiffs' expert readily testifies, is only "an important *precursor* to the impairing lung disease, [CBD]."  (Maier Aff. at ¶ 6) (emphasis supplied).  Even crediting Dr. Maier's hypothesis that those persons experiencing beryllium sensitization will most likely suffer from CBD at some future date, the sensitivity to beryllium is not a condition that, to a "reasonable medical certainty," will result in disease.  Boyd, 381 S.E.2d at 298.  It does not, even according to Dr. Maier, constitute "actual disease, pain, or impairment of some kind" within the meaning of Boyd.  Id. at 298; see also Maier Aff. at ¶ 3

14

("Individuals who have [beryllium] sensitization *without disease* are at increased risk for *subsequently* developing chronic beryllium disease.") (emphasis supplied). For this reason, the Court does not find that beryllium sensitization is an actionable tort injury under Georgia law.[5]

Moreover, the Court finds Plaintiffs' attempt to liken beryllium sensitization to HIV or the pleural plaques or pleural thickening caused by exposure to asbestos unavailing. First, as this Court stated in its March 2005 Order, HIV is itself a medically recognized "disease." See Parker, 377 F. Supp. 2d at 1301; see also Waddell v. Valley Forge Dental Assocs., 276 F.3d 1275, 1283 (11th Cir. 2001) ("HIV has catastrophic effects and is inevitably fatal"). While it is also, in a sense, the "precursor" to another, fatal disease (AIDS), the

---

[5] In reaching this holding, the Court notes that other courts, in the workers' compensation context, have held that the mere sensitivity to a substance, without overt physical impairment, does not constitute an actionable "injury" as a matter of law. See, e.g., A New Leaf, Inc. v. Webb, 495 S.E.2d 510, 516 (Va. Ct. App. 1998), aff'd, 511 S.E.2d 102 (Va. 1999) ("Although claimant's allergic sensitivity to the allergen in these flowers had a physical manifestation–the contact dermatitis on her hands and arms–her underlying problem cannot be understood as an 'injury.' "); accord Sanders v. Seaside Nursing Home, 861 A.2d 1283, 1285 (Me. 2004) (sensitivity was not compensable once claimant stopped exhibiting symptoms); Fid. Mut. Life Ins. Co. v. Workmen's Comp. Appeal Bd., 559 A.2d 84, 85-87 (Pa. Commw. Ct. 1989) (rejecting contention that "sensitization" was claimant's initial injury).

fact that HIV is a viral infection with inherent adverse health consequences puts it on distinctly different footing than beryllium sensitization. Cf., e.g., Bragdon v. Abbott, 524 U.S. 624, 635, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998) (discussing initial stage of HIV, stated "[m]ononucleosis-like symptoms often emerge between six days and six weeks after infection, at times accompanied by fever, headache, enlargement of the lymph nodes (lymphadenopathy), muscle pain (myalgia), rash, lethargy, gastrointestinal disorders, and neurological disorders[,]" and that during subsequent, so-called "asymptomatic phase[,] . . . clinical features persist throughout, including lymphadenopathy, dermatological disorders, oral lesions, and bacterial infections").

Plaintiffs' effort to sustain the viability of claims predicated on beryllium sensitization by comparing the condition with the pleural plaques or pleural thickening caused by exposure to asbestos is equally unpersuasive. As an initial matter, Plaintiffs have not directed the Court to any decision authored by the Georgia courts holding that asymptomatic pleural thickening or pleural plaques constitutes an actionable injury. The issue of whether such conditions constitute an "injury," moreover, appears to remain unsettled in the broader body of tort law. Compare Joyce v. A.C. & S., Inc., 785 F.2d 1200, 1205 (4th Cir. 1986)

(asymptomatic pleural thickening constituted injury, and commenced Virginia statute of limitations); Brennan v. Owens-Corning Fiberglas Corp., 10 P.3d 749, 751 (Idaho 2000) (presence of pleural plaques or scarring was evidence of "actual injury"); with In re Hawaii Fed. Asbestos Cases, 734 F. Supp. 1563, 1567 n.7 (D. Haw. 1990) (proof of "[p]leural plaques, pleural thickening and the ingestion of asbestos fibers" does not permit claimant to recover compensatory damages); Simmons v. Pacor, Inc., 674 A.2d 232, 237 (Pa. 1996) ("After examining the issue at great length, we agree that asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action.");[6] Owens-Illinois v. Armstrong, 591 A.2d 544, 561 (Md. Ct. Spec. App. 1991), aff'd in part and reversed in part, 604 A.2d 47 (Md. 1992) (proper to instruct jury "that damages were not to be awarded merely for pleural plaques or pleural thickening"); cf. also Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 156, 123 S. Ct. 1210, 155 L. Ed. 2d 261 (2003) (observing distinction between individuals afflicted with asbestosis with those experiencing asymptomatic pleural thickening); Amchem

---

[6] The Simmons Court nevertheless permitted a claim for "medical monitoring" to proceed. As the Court held in its March 2005 Order, it does not find that Georgia courts would adopt medical monitoring as an available remedy. See Parker, 377 F. Supp. 2d at 1302.

Prods., Inc. v. Windsor, 521 U.S. 591, 631, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) (Breyer, J., concurring in part and dissenting in part) (recognizing that the "harmfulness" of "pleural thickening and plaques . . . is apparently controversial").

Even assuming, however, that the Georgia courts would acknowledge pleural thickening or pleural plaque as a compensable injury, the Court finds those conditions are sufficiently dissimilar to beryllium sensitization to warrant different treatment. "Asbestos-related pleural thickening has been defined as the formation of calcified tissue on the pleura, the membranes surrounding the lungs." Simmons, 674 A.2d at 236. That alteration of tissue–a demonstrable bodily change–is, in the view of this Court, more analogous to the formation of granulomas associated with CBD than with the precursor to the disease, beryllium sensitization. Although the authorities labeling pleural thickening or plaque compensable injuries might support the treatment of even relatively asymptomatic, early-stage CBD as an injury compensable in tort, they lend little support to the conclusion that beryllium sensitization is a legally cognizable harm.

For all the foregoing reasons, the Court concludes, as a matter of law,

18

that beryllium sensitization is not a compensable injury within the meaning of Georgia law.  Because Plaintiffs, as revealed by their more recent filings, claim nothing more, the Court concludes that their suit is due to be dismissed.

## Conclusion

Defendants' Motion to Enforce the March 29, 2005 Order [103], which the Court treats as a motion for summary judgment, is **GRANTED**.  Plaintiffs' claims are **DISMISSED**.  Defendants' Motion for Judgment on the Pleadings as to the Class Claims [104] is **DENIED as moot**.

**SO ORDERED** this   10th   day of March, 2006.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)